**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| XIN "KELLY" YANG and TING "SUSAN" CHEN, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>A FEI, SHUYUN CHEN, YU "RITA" CHEN, YUEZHU DU, YURONG "MARY" HU, YUXIA HU, XUE "LINDA" LIN, QILONG "LUCY" LIU, LIJUN OUYANG, JINGYI SHEN, WENLING "ABBY" WANG, YUN YE, NAN "LUCAS" ZHENG, XIAONA "LINA" ZHOU, LEI "ANDY" ZHU, ASZ SUPPLY INC., AND DOE DEFENDANTS 1-100,<br><br>    Defendants. | CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED<br><br>Case No. |

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................ 4

II.  JURISDICTION AND VENUE .......................................................................... 7

III.  PARTIES ............................................................................................................ 7

    A.  Plaintiffs ................................................................................................... 7

        i.  Xin "Kelly" Yang ........................................................................ 7

        ii.  Ting "Susan" Chen ...................................................................... 7

    B.  Defendants ................................................................................................ 7

        i.  A Fei, or, "the Boss." ................................................................. 7

        ii.  Shuyun Chen ................................................................................ 8

        iii.  Yu "Rita" Chen ........................................................................... 9

        iv.  Yuezhu Du .................................................................................... 9

        v.  Yurong "Mary" Hu ..................................................................... 9

        vi.  Jingyi Shen, Lei "Andy" Zhu, and ASZ Supply, Inc. ............................. 10

        vii.  Nan "Lucas" Zheng ..................................................................... 12

        viii.  Wenling "Abby" Wang ................................................................ 12

        ix.  Xiaona "Lina" Zhou .................................................................... 13

        x.  Yuxia Hu ...................................................................................... 10

        xi.  Xue (Linda) Lin ........................................................................... 10

        xii.  Qilong (Lucy) Liu ........................................................................ 10

        xiii.  Lijun Ouyang ............................................................................... 11

        xiv.  Yun Ye .......................................................................................... 12

        xv.  Doe Defendants 1-100. ............................................................... 13

IV.  FACTS .............................................................................................................. 14

    A.  The Deposit Scheme. ............................................................................. 14

i. Homexdeals.com ............................................................................. 14

ii. "Amazon Orders." ........................................................................ 20

iii. "Address Orders." ....................................................................... 25

iv. The Deposit Scheme evolves to lure additional victims. ......................... 31

B. The False Amazon Return Scheme. ................................................. 31

C. Defendants knew or were recklessly indifferent to the truth about the Deposit Scheme. ............................................................................................ 32

D. The Deposit Scheme unravels. ....................................................... 34

V. SPECIFIC MISREPRESENTATIONS AND OMISSIONS ............................. 35

VI. CLASS ALLEGATIONS ....................................................................... 39

VII. CLAIMS FOR RELIEF ......................................................................... 41

COUNT I – RACKETEERING – 18 U.S.C. §§ 1962(c), 1964(c) ........................... 41

A. The RICO Enterprise. ................................................................... 41

B. A continuous pattern of racketeering activity. ................................... 42

i. Mail/wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. ................. 42

ii. Money laundering in violation of 18 U.S.C. § 1956. ............................ 43

C. Defendants' RICO violations injured Plaintiffs and the Class. .............. 44

COUNT II – RACKETEERING CONSPIRACY – 18 U.S.C. § 1962(c) .................... 44

VIII. REQUESTED RELIEF ......................................................................... 45

IX. JURY DEMAND ................................................................................. 45

Xin "Kelly" Yang and Ting "Susan" Chen ("Plaintiffs"), on behalf of themselves and all others similarly situated individuals ("Class," defined in more detail below), seek damages and injunctive relief against A Fei ("the Boss"),[1] Shuyun Chen ("S. Chen"), Yu "Rita" Chen ("Y. Chen"), Yuezhu Du ("Du"), Yurong "Mary" Hu ("M. Hu"), Yuxia Hu ("Y. Hu"), Xue "Linda" Lin ("Lin"), Qilong "Lucy" Liu ("Liu"), Lijun Ouyang ("Ouyang"), Jingyi Shen ("Shen"), Wenling "Abby" Wang ("Wang"), Yun Ye ("Ye"), Nan "Lucas" Zheng ("Zheng"), Xiaona "Lina" Zhou ("Zhou"), Lei "Andy" Zhu ("Zhu"), ASZ Supply Inc. ("ASZ"), and Doe Defendants 1-100 (collectively "Defendants"). Except for matters within Plaintiffs' personal knowledge, all allegations are made on information and belief.

## I.   INTRODUCTION

1.   This class action arises from a massive, corrupt enterprise that will be referred to as the "Enterprise" or "HomeX," after one of the Enterprise's main websites and entities, www.homexdeals.com. The Enterprise entailed, among other things, a Ponzi scheme, which will be referred to as the "Deposit Scheme" or simply the "Scheme."

2.   The Deposit Scheme entailed deceiving Chinese-speaking shoppers into believing that they could obtain home furnishings and other goods at a steep discount if they paid Defendants and their co-conspirators deposits for these goods ("Deposits") and waited to receive large refunds of, at a minimum, the amount of the Deposits themselves. The Enterprise also involved convincing customers to buy into the HomeX club membership, which Defendants and their co-conspirators claimed would entitle customers to even larger rebates on their purchases or effectively receive the products for free. Defendants and their co-conspirators

---

[1] A Fei is a nickname, and, as discussed in more detail below, was widely referred to as "the Boss" of the enterprise. Plaintiffs do not yet know his real name.

4

asserted that the source of these rebates was that A Fei and other principals of the Enterprise would profitably invest the Deposits and membership fees in the short term, permitting the Enterprise to generate the income necessary for the promised refunds. In addition, Defendants and their co-conspirators also claimed that they were offering products at extremely low prices or practically free because they were trying to accumulate a large following. They also claimed that by becoming "bestsellers" (*i.e.*, sellers with high sales volume), HomeX would make more money. They further claimed that they were willing to give products away for free or very cheaply because "Chinese people help other Chinese people" and that this "patriotic" assistance was made possible by the money that they had "fleeced" Americans out of.

3.      All of this was false and misleading, and Defendants and their co-conspirators either knew or recklessly disregarded that.

4.      The truth was that no club existed; that there was no legitimate mechanism to pay refunds; and that it was a Ponzi scheme. Refunds were "paid" from Deposits and membership fees paid by new customers, in classic Ponzi fashion. Defendants and their co-conspirators knew or recklessly disregarded this scheme was unsustainable, and they pocketed most of the Deposits for themselves, without telling Plaintiffs and the Class they were doing so. As a result, most customers, including Plaintiffs and the Class, suffered large losses. Plaintiff Yang, for example, has lost over 60,000 USD, and nearly 60,000 RMB. Plaintiff Chen has lost over 10,000 USD. Meanwhile, based on information currently known to Plaintiffs, the Class has lost at least 7 million USD, and 12 million RMB.

5.      A Fei was the leader of the Enterprise and was referred to by HomeX administrators as "the Boss." A Fei had previously operated earlier iterations the Enterprise beginning as early as 2018.

6.      In the form known as HomeX, the Enterprise began no later than early 2020, and began collapsing in late 2022, when certain insiders alerted customers that, in the insiders' words, HomeX was a "scam." However, in early 2023, Defendants and their co-conspirators immediately launched a new iteration, which they called FXD, using the website www.furniturexdeals.com.

7.      The Deposit Scheme aspect of the Enterprise was carried out in large part via dozens of WeChat[2] groups, with day-to-day responsibilities resting in individuals known as "administrators" ("Administrators").[3]

8.      The Administrator Defendants (defined below) were responsible for promoting the Enterprise and the Deposit Scheme; soliciting money from customers, including Plaintiffs and the Class; issuing refunds; administering the WeChat groups in which the Deposit Scheme was carried out; and managing staff and assistants.

9.      Defendants and their co-conspirators engaged in at least two forms of racketeering activity from between no later than early 2020 to at least late 2022, namely mail/wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, and money laundering in violation of 18 U.S.C. § 1956. Additionally, based on their attempt to launch FXD in early 2023, in the immediate aftermath of the HomeX Deposit Scheme, it is likely that this pattern of racketeering has and will continue.

---

[2] Wechat is a chat app widely used in China and among Chinese-speaking communities in the United States. In addition to allowing participants to chat both one-on-one and in groups, it also allows participants to make and receive payments, generally in Chinese currency (RMB).

[3] The Chinese term they used was *guanliyuan* (管理员).

## II.       JURISDICTION AND VENUE

10.       This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C.

§ 1331 and under 18 U.S.C. § 1964(c).

11.       Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a

substantial number of the events giving rise to this action occurred in this District. It is also

proper under 18 U.S.C. § 1965(a) because the Defendants reside, are found, have agents, or

transact their affairs in this District.

## III.       PARTIES

### A.       Plaintiffs

#### i.       Xin "Kelly" Yang

12.       Xin "Kelly" Yang is a resident of Washington. Plaintiff Yang was a customer of

the HomeX Enterprise and the Deposit Scheme. Plaintiff Yang lost more than 60,000 USD and

60,000 RMB by reason of the misconduct of Defendants and their co-conspirators.

#### ii.       Ting "Susan" Chen

13.       Ting "Susan" Chen is a resident of New York. Plaintiff Chen was a customer of

the HomeX Enterprise and the Deposit Scheme. Plaintiff Chen lost more than 10,000 USD by

reason of the misconduct of Defendants and their co-conspirators.

### B.       Defendants

#### i.       A Fei, or, "the Boss."

14.       A Fei, or, as he was referred to by HomeX Administrators, the Boss, is the leader

of the Enterprise and the mastermind of the Deposit Scheme, as well as other fraudulent

schemes engaged in by the Enterprise. His name is believed to be Chuwen Xu and he is believed

to live in the People's Republic of China.

### ii.      Administrator Defendants

15.      "Administrator Defendants" refers to those listed in this subsection, except for Lei "Andy" Zhu and ASZ Supply, Inc. All Administrator Defendants: (1) marketed the Enterprise and the Deposit Scheme to potential victims; (2) ran WeChat groups that administered the Enterprise and the Deposit Scheme; (3) took product orders and money from victims; (4) were compensated for their roles in administering the Enterprise and Deposit Scheme; (5) had access to and reviewed internal documents and communications revealing the fraudulent nature of the Enterprise and Deposit Scheme; and (6) made false and misleading statements and omissions to victims about the Enterprise and Deposit Scheme, including by failing to disclose that the Enterprise and Deposit Scheme were fraudulent.

### a.      Shuyun Chen

16.      Shuyun Chen was the Administrator of the WeChat group entitled "联系不了加小号 shuchen8051988," which translates to "If you can't reach me, add my small account shuchen8051988."[4] Defendant S. Chen helped victims order items and dealt with payment processing. Defendant S. Chen also had an unknown assistant (alias "ALAIA") responsible for record-keeping.

17.      Defendant Chen is a resident of Pennsylvania.

---

[4] The concept of a "small account" appears intended to convey the idea that this Defendant would offer personalized service if victims communicated with Defendant on that account.

### b.    Yu "Rita" Chen

18.    Yu "Rita" Chen was the Administrator of at least ten HomeX WeChat groups, one of which was entitled "HomeX 高端家居产品免费送 3," which translates to "High-end Home Products Delivered for Free 3," and at least nine others with variations on the name.[5]

19.    Defendant Y. Chen had several subordinates who acted as HomeX Administrators themselves, and Defendant Y. Chen took a cut of their HomeX earnings.

20.    Defendant Y. Chen is a resident of New York.

### c.    Yuezhu Du

21.    Yuezhu Du was the Administrator of the HomeX WeChat group entitled "心的感觉- homex 管理员-Yuezhu Du 2022-04-09," which translates into "The heart's feelings -homex administrator - Yuezhu Du 2022-04-09." Defendant Du helped victims process orders, answered questions, and explained HomeX's transaction model to victims.

22.    Defendant Du is a resident of New York.

### d.    Yurong "Mary" Hu

23.    Yurong "Mary" Hu was the Administrator of several HomeX WeChat groups including one entitled "Home X 家具群土豪群" which translates to "Home X Furniture Nouveau Riche Group."

24.    Defendant M. Hu is a resident of New York.

---

[5] It appears that the name of each additional group Defendant Y. Chen ran had the same name but that she added a higher decimal to the number at the end of the second group's name in each case. For example, the second group's name ended in 3.1, third group's name ended in 3.2, and so on.

### e.      Yuxia Hu

25.      Yuxia Hu was an Administrator using a WeChat account with the name "紫玫瑰 对帐中消息延迟回复," which translates to "Purple Rose – reconciling accounts, response may be delayed." Defendant Y. Hu helped victims process orders and asked victims to Zelle the Deposit to her bank account under the name "Yuxia Hu." Defendant Y. Hu urged victims to place the orders by telling them if they did not place orders soon, the items would be out of stock on Amazon. Defendant Y. Hu claimed she could offer refunds within a month— significantly faster than other administrators—and encouraged victims to choose her as their Administrator for their orders.

26.      Defendant Y. Hu's residence is currently unknown.

### f.      Xue "Linda" Lin

27.      Xue "Linda" Lin was an Administrator using a WeChat account with the names of Xue Lin (Linda) and "快乐宝贝专业办理免税号," which translates to "Happy Baby – Account for Professional Coordination Tax Exemption." Defendant Lin marketed HomeX to victims by showing them product photos, including but not limited to tables, chairs, and beds, and encouraged them to place orders. Defendant Lin also guided victims through the order process, addressing their inquiries, and how to leave reviews on Amazon favoring the Enterprise.

28.      Defendant Lin is a resident of New York.

### g.      Qilong "Lucy" Liu

29.      Qilong "Lucy" Liu was an Administrator using a WeChat account with the name "努力对帐中," which translates to "Working Hard on Account Reconciliation." Defendant Liu gave victims detailed instructions on how to obtain refunds from online retailers (particularly

10

Amazon) while circumventing the need to return the products. Defendant Liu also instructed victims to use a variety of payment methods and account details, such as Zelle, Alipay, and WeChat Pay, to facilitate transfer of their money to the enterprise.

30.     Defendant Liu is a resident of Michigan.

### h.     Lijun Ouyang

31.     Lijun Ouyang was an Administrator using a WeChat account with the name "军【代发 换标 海外仓 测评," which translates to "Jun [Army] Proxy shipping, Relabeling, Overseas warehouse(s), Product Testing and Reviews." Defendant Ouyang later changed that account name to "海外仓," which translates to "Overseas warehouse(s)." Defendant Ouyang crafted instructions for victims, guided them through the refund process in exhaustive detail, particularly for products delivered from Amazon. Defendant Ouyang also provided an array of financial accounts for transactions, employing various names and details in an attempt to obscure the purpose of these transactions.

32.     Defendant Ouyang is a resident of Pennsylvania.

### i.     Jingyi Shen, Lei "Andy" Zhu, and ASZ Supply, Inc.[6]

33.     Jingyi Shen was the Administrator of a HomeX group initially entitled "西瓜酱–免评产品家具家电家居, " which translates into "Watermelon Sauce – No-product-review[7] furniture, appliances, home décor."[8] Jingyi Shen was also the Administrator of the similarly-

---

[6] Defendants Zhu and ASZ were not themselves Administrators, but are listed here because of their close association with Defendant Shen.

[7] This may be a reference to the fact that some e-commerce schemes involve a requirement that a participant leave product reviews.

[8] This group changed its name to "草莓酱-HomeX 咨询 2 群," which translates into "Strawberry sauce – HomeX consultation group 2" in 2023.

titled "草莓酱-HomeX 免评家具家电数码," which translates to "Strawberry Sauce – HomeX –
No-product-review furniture, appliances, digital." Lei "Andy" Zhu is her husband, though they
hid that fact from customers. Defendants Shen and Zhu jointly owned and managed ASZ
Supply, Inc., which received Deposits and other monies from Plaintiffs and the Class.

34.     Defendants Shen and Zhu are residents of Georgia.

35.     Defendant ASZ is organized under the laws of New Jersey. It was formed on
November 16, 2020. A certificate of dissolution was filed on December 5, 2022—just as the
HomeX Deposit Scheme was collapsing.

### j.     Wenling "Abby" Wang

36.     Wenling Wang was the Administrator of the WeChat group entitled "Home X-
Abby 高端产品免费送," which translates to "HomeX-Abby High-end products are given away
for free." Defendant Wang used Abby as her account name but later changed it to "对帐中，请
发所有订单一一核对 2022-03-04," which translates to "Reconciliation in progress, please send
all orders for verification one by one 2022-03-04."

37.     Defendant Wang is a resident of Nebraska.

### k.     Yun Ye

38.     Yun Ye was an Administrator using a WeChat account with the name "云 (贴标
换标)," which translates to "Yun [Cloud] (Labeling [and] Relabeling)." Defendant Ye was
involved in arranging purchase orders and refunds. He supplied numerous victims with multiple
different financial account details and encouraged them to transfer their money to the Enterprise.
Defendant Ye cooperated closely with Defendant Ouyang and sometimes requested that they
select "Jun," that is, Defendant Ouyang, as the Administrator to process refunds.

39.     Defendant Ye is a resident of New Jersey.

### l.        Nan "Lucas" Zheng

40.    Nan Zheng was the Administrator of the WeChat group entitled "HomeX Lucas." He asked victims to transfer Zelle payment to accounts under the name of Nan Zheng. He also had an unknown assistant (alias "Q") who assisted in answering victims' questions and recording the payments.

41.    Defendant Zheng is a resident of Wisconsin.

### m.        Xiaona "Lina" Zhou

42.    Xiaona "Lina" Zhou was the Administrator of the HomeX WeChat group entitled "HomeX 莉娜管理员对接群 1," which translates to "HomeX Administrator Lina coordination group 1." Defendant Zhou helped victims process orders and answered their questions. Defendant Zhou even reassured victims that HomeX team was operating smoothly and there was no issue of refunds not being issued. Defendant Zhou also had many unidentified assistants who helped Zhou operate group chats, such as one who went by the alias "x 神婆 (roughly, 'Witch x')," and one who went by the alias "Fang Li."

43.    Defendant Zhou is a resident of Virginia.

### iii.        Doe Defendants 1-100.

44.    The Doe Defendants 1-100 are those who participated in the conduct of the Enterprise and the Deposit Scheme or conspired to do so by, for example, providing warehouses for furniture sold via the Enterprise, or by providing accounting, money management, or similar services to the Enterprise, while knowing or recklessly disregarding that they were aiding and abetting mail and wire fraud. They will be named after a reasonable opportunity for discovery.

## IV.    FACTS

### A.    The Deposit Scheme.

45.    The HomeX Enterprise entails multiple fraudulent schemes. One such scheme was the Deposit Scheme, which entailed a purported method of obtaining home furnishings and other high value goods from e-commerce outlets like Amazon, for little more than the sales tax. As Plaintiffs and the Proposed Class were told, all they had to do was contribute a refundable deposit ("Deposit"), usually several multiples of the price of the item they wanted to purchase, to HomeX. The Chinese term for the refundable deposit was *quanhuojin* (圈货金), which translates roughly into "deposit for group goods." It conveys the notion that the monies were related to participation in a group purchasing arrangement.

46.    Plaintiffs and the Proposed Class were told that HomeX would be able to generate returns on the Deposits through the business acumen of HomeX's principals, including A Fei, which returns would enable HomeX to eventually refund the Deposits, as well as the item's purchase price, less sales tax.

47.    All this was false. The principal source of monies for refunds was not returns generated on Deposits by the business acumen of A Fei or others. Rather, it was monies contributed by later customers. It was, in other words, a Ponzi scheme.

#### i.    Homexdeals.com

48.    One of the vehicles for the Deposit Scheme was a website, homexdeals.com. Though now defunct, historical captures show parts of the Scheme's workings.

49.    For example, Figure 1 below is from a December 7, 2021 capture of the website, available at https://web.archive.org/web/20211207194941/http://homexdeals.com/.

14



**Figure 1**

50.    The QR code on the top left was for customers who had not yet been assigned a manager, and scanning it would lead the customer to a HomeX WeChat group where they would be so assigned.

51.    Figure 2 below shows a screenshot of the QR code. The top text reads: "If you don't have an Administrator, please scan the below QR code to add an Administrator and place orders." The text in bold translates into: "HomeX-Lucy – group for making Administrator pairings 10-2."[9]

---

[9] Since there is a group chat entitled "10-2", it is a reasonable inference that there may be other group chats such as "10-1", "10-3, each involving many victims.



**Figure 2**

52.     Once paired with an Administrator, customers were offered multiple ways of ordering products and obtaining refunds. What all had in common was a requirement that a Deposit in an amount that was usually several multiples of the product's listed price be paid. HomeX and its Administrators represented that, after a certain amount of time, the Deposit would be refunded in whole or in part, resulting in the customer obtaining the product for a substantial discount or even free. The actual final price varied by item or level of membership, and the turnaround time for the refund varied over the course of the Scheme.

53.     Figure 3 below is illustrative.



**Figure 3**

54.     The top half of the page displayed so-called "Amazon Orders," while the bottom

half of the page displayed so-called "Address Orders."

55.     Beginning with the Address Orders, the associated text displays, among other things, the required Deposit for each item.[10] For example, if customers wanted to buy one of the chairs in the first row, they would have to pay a specific amount as a Deposit, which was generally several times higher than the actual value of the merchandise. HomeX represented that customers would later be either fully or partially refunded after they paid the Deposit.

56.     As for the Amazon Orders, the required Deposit is not displayed in the above screenshot in part because, at the time, the links are not to particular items but to particular storefronts, many if not most were owned and controlled by A Fei and A Fei's co-conspirators. The associated text explains that not all items in the linked stores are eligible for the Deposit Scheme, and instructs customers to coordinate with the Administrators with whom they'd been paired about particular items. In addition, it also instructs customers to pay specified Deposits to HomeX, and also pay the original price of the merchandise on the Amazon website. In later stages, there were far more items than in earlier stages and links to particular items were directly provided to victims.

57.     Other spreadsheets were used to list the required Deposits for Amazon Orders. For example, the below screenshot is of one tab in one cloud-based spreadsheet for Amazon Orders.[11]

---

[10] Items ordered via Address Orders only ever had Deposit prices associated with them; no purchase price was ever given. However, some Address Order also had a "Self-Pay Price." The Self-Pay Price was variation on the Deposit Scheme. Whereas a typical Address Order would normally entail the refund of 100% of the Deposit (after a long period of time), the Self-Pay Option entailed the refund of some amount less than 100%, in exchange for various benefits, such as faster delivery times, a lower overall Deposit amount, etc.

[11] As of this writing, the URL still works. However, other URLs associated with HomeX no longer work or are not accessible to the public. The URL for this particular spreadsheet is: https://docs.qq.com/sheet/DR1BJTHpBS011em91?tab=1qd5br.



**Figure 4**

58. The title of the spreadsheet includes the phrase "HomeX FBA," which refers to "Fulfillment by Amazon," an Amazon program whereby merchants can sell their products on the Amazon website, and pay Amazon to handle shipping, customer service, returns, and the like. That is likely because, earlier in the Scheme, HomeX and its co-conspirators actually ran some of the underlying stores. In any event, and as discussed in more detail below, by the end of the Scheme, HomeX did not limit orders to FBA, or indeed, to either Address Orders or Amazon Orders at all.

59. As can be seen in the above screenshot, the spreadsheet includes a link to particular products, pictures of those products, and two columns of numbers. The first column lists the required Deposit, and the second column lists the number of days it will take to get the promised refund.

60.     For example, for the nightstand on the first row, the HomeX Deposit is $500 USD, and the number of days is 90. Meanwhile, the link pointed to the below product listed on Amazon for $159.99 USD.



**Figure 5**

61.     As can be seen, the required Deposit is several times the actual price of the item. Defendants and their co-conspirators represented to Plaintiffs and the Proposed Class that both the Deposit and the purchase price would be refunded—in this case, within 90 days.

**ii.      "Amazon Orders."**

62.     The screenshots below are of a conversation in which Plaintiff Yang places Amazon Orders with Defendant Shen.



**Figure 6**                    **Figure 7**

63.    In Figure 1[12], Plaintiff Yang sends Defendant Shen screenshots of two items

listed on Amazon, an oven and a chair. In the second screenshot, Plaintiff Yang asks if her

---

[12] Plaintiff Yang was previously acquainted with Defendant Shen via a WeChat group for pet-related products. Thus, her initial message to Defendant Shen asks whether the latter was indeed the same person/account as in the earlier pet-related group.

understanding is correct that, for the chair, she would need to pay a Deposit of $699 USD to Defendant Shen before ordering the item from Amazon.

64.    Defendant Shen's response, shown in Figure 2, appears to have been a form one, copied and pasted from elsewhere. It states: "For Amazon Orders, a *quanhuojin* (Deposit) is required to place orders, and gift cards are not accepted! Delivery of the item is very fast, and you will receive the refund sixty days after delivery. On Amazon, you must pay using a credit card, and not a gift card. As for the refund of the Amazon purchase price, taxes will not be refunded, and the refund will be in USD. If you need the refund to be in RMB, the exchange rate will be the lower of 6.39 RMB per USD, or the actual exchange rate at the time of the refund. For the refund of the Deposit, Deposits paid in USD will be refunded in USD. Deposits paid in RMB at an exchange rate of 7 RMB per USD will be refunded in RMB, in the same amount as was deposited."

65.    Plaintiff Yang sought clarification that the upshot of the Scheme was that she would ultimately only have to pay taxes for the items. Defendant Shen responded: "That's correct."

22



**Figure 8**



**Figure 9**

66.      In Figure 8, Plaintiff Yang said she wanted to buy both the oven and the chair via the Deposit Scheme. Defendant Shen said that was fine, and that the Deposit for both could be paid in one payment. Defendant Shen also said that on Amazon itself, the items must be purchased in separate orders, rather than as a combined order. She then indicated, in Figure 9, that the Deposit for both items was "499.99+699.99=1199.98 USD." She then provided Plaintiff

23

Yang a Zelle account associated with Defendant ASZ for payment of the Deposit, and asked

Plaintiff Yang to send a screenshot confirming such payment, which Plaintiff Yang did.

67.     Next, Defendant Shen informed Plaintiff Yang that now that the Deposit had

been paid, Plaintiff Yang should go to Amazon, order each item separately, make sure that the

items were "ship[ed] from [A]mazon," and then: (1) copy the Amazon order number; (2) send a

screenshot of the top part of the order confirmation; and (3) send a screenshot of the bottom part

showing payment details.



**Figure 10**               **Figure 11**

68.     In Figures 10 and 11, Plaintiff Yang acknowledges those requirements, and sends

Defendant Shen screenshots of the Amazon transactions, as well as the Amazon order numbers.

Defendant Shen confirms receipt.

### iii.     "Address Orders."

69.     The terms and process for a so-called "Address Order" were slightly different.



**Figure 12**                    **Figure 13**

70.     In Figure 12, Defendant Shen responds to an earlier message from Plaintiff Yang

inquiring about such orders, explaining that there is currently a discount on such orders,

whereby customers only have to pay 66% of the normal Deposit—*i.e.*, that there was currently a

34% discount on such orders. Defendant Shen further explains that the Deposit would be

refunded 30 days after delivery of the item, but if the customer were willing to agree to a Self-

Pay Price of 10% of the Deposit—that is, agree to have 10% of the Deposit be retained by HomeX—they could receive "VIP" treatment in the form of delivery in half the normal time (delivery times for Address Orders were typically months after the order was placed).

71.     In this figure, Defendant Shen also explains that new customers get a $200 credit that can be applied to their first order.

72.     In Figure 13, Defendant Shen provides a homexdeals.com link to a particular item with a Self-Pay Price of $1,551, and an associated Deposit amount of $5,170. Because of the 34% discount, these amounts were reduced to $1,024 and $3,412 respectively. Further, as a new customer, Plaintiff Yang was also entitled to a $200 coupon, further lowering the Self-Pay Price to $824. Finally, Defendant Shen explains that, if Plaintiff Yang didn't want to pay the Self-Pay Price, Plaintiff Yang could pay a higher Deposit in the amount of $6,824 (*i.e.*, double the Deposit amount associated with the Self-Pay option).



**Figure 14**                                    **Figure 15**

73.     In Figure 14, Plaintiff Yang asks about two items available via the Address Order method—a sheep-shaped ottoman, and a paddleboard. Defendant Shen quotes discounted Deposit amounts of $300 for the first, and $517 for the latter, totaling $847.



**Figure 16**                        **Figure 17**

74.      In Figure 16, Defendant Shen instructs Plaintiff Yang to make the $847 in

Deposit payments to two Zelle accounts—one to the account of a person with the alias "jiang,"

and with the phone number (201) 423-3105, and the second to the account for the alias "fang bin

li" and with the email address fangbin@me.com. Plaintiff Yang was also to send screenshots of

proofs of these payments. Plaintiff Yang did so in Figures 16 and 17.

75.    As for why the Deposits were paid to those accounts, Defendant Shen had earlier explained it.



**Figure 18**

76.    In Figure 18, in a conversation from a few weeks earlier, Plaintiff Yang had asked about why the recipients of the Deposit payments had changed. Defendant Shen explained that the reason was that the recipients were HomeX customers who had just become entitled to a

refund of their Deposits and that having customers pay each other directly in this way simplified things and reduced the number of transactions. She also noted that customers would not want to repeatedly receive payments from the company's Zelle account.[13]

77.     These statements were knowingly or recklessly false. The real reason for this arrangement was that, contrary to Defendants' representations, the source of HomeX's ability to offer such rebates was not HomeX's ability to generate profits using the Deposits, but was rather HomeX's continual receipt of new Deposits. HomeX was, in short, a Ponzi scheme, bound to collapse. This it did, as discussed in more detail below.

### iv.     The Deposit Scheme evolves to lure additional victims.

78.     The foregoing summarizes the basics of the Deposit Scheme. Over time, additional wrinkles emerged, as Defendants sought to trick customers into giving them more money. For example, HomeX began to offer membership tiers that affected the amount of the Deposit: these included the Ordinary, Fans, and Green Card tiers. Customers could pay to become HomeX Fans by paying HomeX a certain sum in exchange for lower Deposit amounts on their orders, while a Green Card membership cost more (and at one point cost $1,200) but would exempt members from having to make any more Deposit payments at all.

### B.     The False Amazon Return Scheme.

79.     The HomeX Enterprise also entailed at least one other fraudulent scheme, targeting Amazon. When customers purchased items via Amazon Orders, HomeX's

---

[13] Among the reasons that victims might have wanted to avoid repeatedly receive Zelle payments from HomeX directly included that such might cause their Zelle accounts to be flagged or frozen, which indeed occurred in 2023 to several victims. Additionally, because many victims had large amounts on deposit with HomeX, many wanted to avoid causing trouble for HomeX, including the risk that HomeX's Zelle accounts might be frozen, which would put their own refunds at risk. In short, although victims generally preferred to pay Deposits to HomeX's Zelle accounts, in no small part because doing so would leave a record, many gradually accepted HomeX's requirement that Deposits be paid directly to other buyers awaiting refunds.

Administrators sometimes initiated fraudulent returns on those items. They were able to do so because they or others, including Doe Defendants, controlled the Amazon storefronts from which the items were purchased. They did so regardless of whether customers were satisfied with the items, which were not returned to Amazon. And they did so in part because the HomeX Enterprise was not willing or able to fund the refund of the Deposits to customers on its own, and thus effectively used Amazon's money to fund some or all those refunds.

80.     Another variation on the Amazon return scheme was when the HomeX Administrators asked customers to apply for refunds via Amazon's "A-to-z Guarantee" program. The Amazon A-to-z Guarantee program is a guarantee that protects buyers when they purchase items from third-party sellers on Amazon that are also fulfilled by those sellers. It covers the condition and timely delivery of the items, and buyers can request a full reimbursement or cancel their authorized payment if they are not satisfied with the purchase. HomeX sometimes asked customers to submit refund requests via the A-to-z Guarantee program, with some Administrators, including Defendant Y. Chen, even providing detailed guidance to victims on how to interact with Amazon customer service to ensure Amazon would provide the refund. In so doing, HomeX was able to keep monies it had received from victims while claiming to have provided victims with the promised refunds.

**C.     Defendants knew or were recklessly indifferent to the truth about the Deposit Scheme.**

81.     All Defendants knew or were recklessly indifferent to the fact that the Deposit Scheme was a Ponzi scheme or otherwise fraudulent.

82.     For example, on or around August 18, 2021, Defendant Y. Chen was explicitly confronted with the fact that the economics of the Deposit Scheme did not make sense and was directly asked how HomeX made money.

83.    Defendant Y. Chen's response was to emphasise the "benefits" that customers obtained from the Scheme, and the importance of "introducing more people to join" the Scheme—all but admitting, therefore, that it was a Ponzi. Indeed, when told that such would only create a "vicious cycle," Defendant Y. Chen did not deny it, and instead doubled down on the benefits of participating in the Scheme. Not only that, she explicitly acknowledged that customers had to "accept some risk" if they were going to participate. Despite all this, Defendant Y. Chen continued to solicit customers for the Deposit Scheme and to take their money until late 2022.

84.    As another example, in March 2022, Defendant Wang told a group of victims: "when placing an order, be prepared for the worst-case scenario—you might not get your money back." She also said that "the worst-case scenario is the boss running away."

85.    Similarly, in April 2022, Defendant Hu admitted that she had serious doubts of the legitimacy of the Scheme. Specifically, she said that she was not "100% sure" whether buyers would receive all their money back or receive all of the products they ordered. Additionally, she said that if others should "run off" with the money, customers should not "come looking for me." She even tried to reassure customers who made their purchases from Amazon and using credit cards that Amazon and the credit card companies would "protect" any customers who'd been defrauded. Despite all this, Defendant Hu continued to solicit customers for the Deposit Scheme and to take their money until late 2022.

86.    Worse, when the Scheme unraveled, Defendant Hu blamed the victims, pointing out that she'd warned them to "spend rationally," but that "no one listened to me, and now that there's a problem, they all want me to compensate them." The problem with Defendant Hu's

self-serving account was that *she'd personally devoted considerably energy to getting the customers she was responsible for to increase their spending, which they did*.

87.     As another example, one of Defendant Y. Chen's subordinates, known as "Xiaomi," knew no later than the fall of 2022 that the Deposit Scheme was fraudulent. In particular, in November 2022, Xiaomi told one customer that Xiaomi had quit working for Defendant Y. Chen because Xiaomi suspected that HomeX and the Deposit Scheme were fraudulent.

### D.     The Deposit Scheme unravels.

88.     By the end of 2022, the Deposit Scheme was beginning to collapse, in that, by then, hundreds, if not thousands, of customers had made Deposits with HomeX which were due to be refunded but which were not.

89.     Then, in December 2022, the Administrator of one of the WeChat groups, known as "Jun," posted a message stating that the entire Deposit Scheme was a "scam," and that "the boss," that is Defendant A Fei, "took the money and ran!"

90.     The next day, Defendant A Fei posted an announcement in all HomeX WeChat groups asserting that, in fact, it was "Jun" who was the bad actor, while making excuses for why Deposits had not been timely refunded as promised.

91.     In the wake of the collapse of the Deposit Scheme, multiple lawsuits were filed, mostly in small claims court, some of which have resulted in judgments. For example, on September 11, 2023, certain victims of the Scheme obtained a default judgment against Defendants Shen and Zhu in the amount of $14,999 in a Georgia small claims court.

## V.    SPECIFIC MISREPRESENTATIONS AND OMISSIONS

92.    In connection with the Enterprise, the Deposit Scheme, and the False Amazon Return Scheme, Defendants and their co-conspirators made numerous misrepresentations and omissions. Below are examples of those misrepresentations and omissions.

a.    On or around January 18, 2021, in a group chat, Defendant A Fei encouraged victims to submit Amazon refund requests, and stated that it was "very safe" to do so, while omitting to disclose that doing so was part of a fraudulent scheme aimed at benefiting A Fei and his co-conspirators. As a result of Defendant A Fei's instructions, return requests were in fact submitted to Amazon, and Amazon in fact issued refunds. All this was false and misleading because: (1) as to Amazon, it falsely asserted to Amazon that some defect existed with the order, when in fact none did; and (2) as to customers, it falsely suggested that the return requests were legitimate, when in fact they were not, and were intended to defraud both customers and Amazon for the benefit of Defendants and their co-conspirators.

b.    On or around August 18, 2021, Defendant Y. Chen told a victim who asked how the Deposit Scheme worked to the benefit of HomeX's principals and sellers that "they had a way to make money." This was false and misleading because it failed to disclose the true nature of the Deposit Scheme, which was that it was funded by Deposits made by later victims, and because it failed to disclose that the way HomeX's principals made money was by taking money from victims.

c.      On or around September 14, 2021, Defendant Y. Chen encouraged a victim to submit an Amazon refund request via Amazon's A-to-z Guarantee program, stating that the reason was that the Amazon storefront from which the victim had purchased the item was now closed, while omitting to disclose that the storefront was part of a fraudulent scheme. As a result of Defendant Y. Chen's encouragement and guidance, many refund requests were made to Amazon's A-to-z Guarantee program. All this was false and misleading for the same reasons as set forth above.

d.      On or around November 20, 2021, Defendant Zheng placated a customer who was worried about getting the promised Deposit refund if the customer placed an Amazon Order by telling the customer not to worry because the customer had already gotten a refund after placing an Address Order, such that there was nothing to worry about with respect to Amazon Orders. This was false and misleading because Defendant Zheng omitted to disclose that the refunds were funded by Deposits made by later customers, such that there was plenty to worry about with respect to both Amazon and Address Orders.

e.      On or around March 4, 2022, Defendant Wang told customers that the Enterprise and the HomeX Deposit Scheme had been operating for two years already, and that in that time "many people have received [both] their goods and refunds." That was false and misleading because it omitted to disclose that the Deposit Scheme was a Ponzi scheme, whereby refunds were being paid out of later customers' Deposits, such

that, even Defendant Wang's statement were literally true, it failed to
disclose the true risk of making Deposits with the Enterprise.

f.      On or around March 4, 2022, Defendant Wang told customers that the
reason Deposits were not being timely refunded was that the number of
orders was increasing, that the administrative team was relatively small,
and that "extending the refund time allows the group leader to ship faster
and the administrators to interact with customers more efficiently and
smoothly, ensuring better service for everyone," all while encouraging
them to place more orders. This was false and misleading because
increasing orders, an insufficient administrative team, faster shipping,
efficient and smooth customer interaction, and better service were not the
main reasons for delayed refunds, and because it omitted to disclose that
the main reason Deposits were not being timely refunded was that
Deposit refunds were being paid from later customers' Deposits, *i.e.*, that
it was a Ponzi scheme, and that, as such, the promised refund schedule
could not be met and would inevitably result in Deposits that would never
be refunded.

g.      On or around April 4, 2022, Defendant Hu told customers that, because
HomeX and its sellers had been operating for two years without running
away, and while timely refunding Deposits, they were reliable. This was
false and misleading because it omitted to disclose that Deposit refunds
were being paid by later customers' Deposits.

h.     On or around May 5, 2022, Defendant Du told a customer that their Deposit would be refunded within 30 days of delivery of the ordered product, while omitting to disclose that HomeX had been funding such refunds with Deposits made by later customers. This was false and misleading because the likelihood that the customer's Deposit would actually be refunded with 30 days was significantly lessened by the fact that the source of such refunds was Deposits made by later customers.

i.     On or around June 28, 2022, Defendant Zhou told a customer that "everything was normal" with respect to the customer's HomeX Deposits; implored the customer "not to worry" and to "believe me" in that regard; while denying that other customers had had trouble getting their Deposits timely refunded, while omitting to disclose that HomeX had indeed had difficulty timely refunding customers' Deposits, and while omitting to disclose that the principal source of those refunds was Deposits made by later customers. This was false and misleading because the truth was that HomeX was having trouble timely refunding Deposits, and because HomeX was funding such refunds from Deposits made by later customers.

j.     On or around July 2, 2022, Defendant Du placated a customer who was worried about getting their Deposit refunded by citing the fact that another customer, in a different WeChat group, had just been refunded more than 3,500 USD. This was misleading because Defendant Du

omitted to disclose that that refund had been significantly delayed, and

that it had been funded by Deposits made by later customers.

k.     In or around December 2022, an Administrator known as Jun accused

HomeX of being a scam. The next day, Defendant A Fei made an

announcement in all HomeX WeChat groups denying that accusation, and

blamed HomeX's failure to refund victims' Deposits as promised on Jun.

Defendant A Fei's denial was false and misleading because Jun's

accusation was largely true—the HomeX Deposit Scheme *was* a scam,

and that was the true reason victims' Deposits had not been refunded.

## VI.     CLASS ALLEGATIONS

93.     Plaintiffs sue on behalf of themselves and a class of: All persons in the United

States who made HomeX, FXD, or similar Deposits that were never refunded (the "Class").

Excluded from the Class are Defendants, their parents, subsidiaries, officers, directors, any

entity in which a defendant has a controlling interest, any entity which has a controlling interest

in a defendant, and the judicial officers to whom this matter is assigned and their staff and

immediate family members.

94.     **Class Identity:** The Class is readily identifiable and Defendants or others should

have records identifying its members.

95.     **Numerosity:** Plaintiffs do not know exactly how many members of the Class

there are, but it is at least in the hundreds, and more likely in the thousands or tens of thousands,

spread across the United States. Information about the precise number will be more readily

available from the Defendants. In all events, the number and geographic scope of the members

of the Class is such that joinder of all class members is impracticable.

96.     **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Class because like all such members Plaintiffs' claims arise from the fact that they made HomeX Deposits that were never refunded, and the relief Plaintiffs seek is common to the Class.

97.     **Common Questions Predominate:** There are common questions of law and fact specific to the Classes that predominate over any questions affecting individual members, including:

   a)     Whether Defendants violated RICO;

   b)     Whether by reason of those violations Plaintiffs and the Class were injured in their business or property; and

   c)     The amount of any damages.

98.     **Adequacy:** Plaintiffs will fairly and adequately protect the interests of the Class in that Plaintiffs' interests are aligned with, and not antagonistic to, those of the other members of the Class who made unrefunded HomeX Deposits. Further, Plaintiffs have retained counsel competent and experienced in the prosecution of class actions to represent themselves and the Class.

99.     **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual joinder of all damaged members of the Proposed Class is impractical. Prosecution as a class action will eliminate the possibility of duplicative litigation. The relatively small damages suffered by many if not most individual members of the Classes compared to the expense and burden of individual prosecution of the claims asserted in this litigation means that, absent a class action, it would not be feasible for most members of the Proposed Class to seek legal redress. Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the court system. A class action presents far fewer case

management difficulties and will provide the benefits of unitary adjudication, economy of scale, and comprehensive supervision by a single court.

## VII.   CLAIMS FOR RELIEF

### COUNT I – RACKETEERING – 18 U.S.C. §§ 1962(c), 1964(c)
### Against all Defendants, including Doe Defendants 1-100

100.    Plaintiffs reallege and incorporate by reference each foregoing paragraph as if fully set forth herein.

### A.    The RICO Enterprise.

101.    Defendants and their co-conspirators are a group of persons associated together in fact for the common purpose of carrying out the HomeX Enterprise, which is a criminal enterprise with the purpose, goal, and effect of defrauding a multitude of individuals and entities, including Plaintiffs and the Class.

102.    Defendants and their co-conspirators have organized the Enterprise into a cohesive group with specific and assigned responsibilities and a command structure, operating primarily in the United States. While the roles and responsibilities of specific members may have changed over time, the Enterprise has generally been structured to operate as follows:

a.      Defendant A Fei is "the Boss" of the Enterprise, and is responsible for setting the overall strategy and direction of the Enterprise;

b.      The Administrator Defendants, among others, are or were Administrators of the Enterprise, and are or were responsible for soliciting new customers, taking orders from them, and receiving Deposits from them;

c.      Defendants Zhu and ASZ, among others, are or were participants in the Enterprise, and are or were responsible for handling monies received from customers, including Deposits and keeping records of such monies; and

41

d.      Doe Defendants 1-100 were either Administrators or otherwise

participated in the conduct of the Enterprise, by providing necessary services for the Enterprise,

while knowing or recklessly disregarding the fraudulent nature of the Enterprise.

**B.      A continuous pattern of racketeering activity.**

**i.      Mail/wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.**

103.    Each Defendant engaged in multiple acts of mail/wire fraud, including aiding and

abetting mail/wire fraud, beginning no later than early 2020.

104.    For example, no later than early 2020, A Fei began marketing the Deposit

Scheme to WeChat users in the United States and hiring Administrators to operate it, while

knowing or recklessly disregarding that the Deposit Scheme was a Ponzi scheme and a fraud.

105.    By 2021, the Deposit Scheme was in full swing, and the Administrator

Defendants, as well as Defendants Zhu and ASZ, were actively working as Administrators to

operate the Scheme, while knowing or recklessly disregarding that it was a Ponzi scheme and a

fraud.

106.    Defendants A Fei and the Administrator Defendants repeatedly made

misrepresentations about, or directed that others make misrepresentations or omissions about the

true nature of the Deposit Scheme by, for example: (1) asserting that the source of monies for

refunding the Deposits was something other than Deposit payments made by later customers; (2)

failing to disclose that the source of monies was Deposit payments made by later customers, *i.e.*,

that it was a Ponzi scheme; and (3) asserting that the operators of HomeX were trustworthy and

had a good track record of ensuring that Deposits were refunded, while failing to disclose that,

to the extent past customers had gotten refunds, they had been funded by Deposits made by later

customers. In addition, Defendants' false returns submitted to Amazon constituted false and

misleading statements because they omitted that the return was a fiction and that its true purpose was merely to generate funds. Defendants A Fei and the Administrator Defendants made such misrepresentations and omissions, or directed that they be made, virtually every day, to countless customers across the United States from no later than early 2020 to at least late 2022.

107.    Meanwhile, Defendants Zhu and ASZ actively helped Defendant Shen operate the Deposit Scheme, while knowing or recklessly disregarding that it was a Ponzi scheme and a fraud.

108.    All Defendants did so while intending to induce customers, including Plaintiffs and the Class, to pay money to the Enterprise.

109.    All Defendants operated or helped to operate the Deposit Scheme daily and continuously until at least late 2022.

110.    In so doing, all Defendants knew that that U.S. mails would be used (to ship products purchased as part of the Deposit Scheme), and also that U.S. wires would be used (to transmit WeChat messages that were necessary to the success of the Scheme). Moreover, because customers were located all over the United States, they knew that their use of the U.S. mails and wires would cross state lines.

111.    Additionally, Defendant A Fei also engaged in, directed, and aided and abetted mail/wire fraud by directing Administrators to instruct customers to initiate fraudulent returns for purchases made on Amazon.

  **ii. Money laundering in violation of 18 U.S.C. § 1956.**

112.    Each Defendant engaged in multiple acts of money laundering, including aiding and abetting money laundering, beginning no later than early 2020.

113.     For example, once the Deposit Scheme was up and running, all Defendants began sending and receiving monies obtained via the Deposit Scheme to, from, and within the United States, including across state lines, while knowing that those monies involved the proceeds of a Ponzi scheme or a fraud.

114.     They did so with the intention of promoting and operating the Deposit Scheme.

115.     They also did so knowing that the transactions were at least partly designed to conceal or disguise the fact that the monies were obtained via a fraudulent Ponzi scheme.

116.     They continued to do so even after the Deposit Scheme collapsed in late 2022.

**C.     Defendants' RICO violations injured Plaintiffs and the Class.**

117.     As a result of Defendants' violations of 18 U.S.C. § 1962(c), Plaintiffs and the Class lost at least 10 million USD, and are thus entitled to trebled damages from Defendants in the amount of at least 30 million USD, plus attorneys' fees and costs.

**COUNT II – RACKETEERING CONSPIRACY – 18 U.S.C. § 1962(c)**
**Against All Defendants, including Doe Defendants 1-100**

118.     Plaintiffs reallege and incorporate by reference each foregoing paragraph as if fully set forth herein.

119.     Each Defendant also agreed to personally engage in or aid and abet mail/wire fraud, as well as money laundering, while knowing that others had similarly agreed to do so, and while knowing that each their role was part of a larger whole, in furtherance of the HomeX Enterprise and Deposit Scheme.

120.     As a result of Defendants' conspiracy, Plaintiffs and the Class lost at least 10 million USD, and are thus entitled to damages from Defendants in the amount of at least 30 million USD, as well as attorneys' fees.

121.    All that must be shown is: (1) that the defendant agreed to commit the substantive racketeering offense through agreeing to participate in two racketeering acts; (2) that he knew the general status of the conspiracy; and (3) that he knew the conspiracy extended beyond his individual role.

122.    As a result of Defendants' violations of 18 U.S.C. § 1962(d), Plaintiffs and the Class lost at least 10 million USD, and are thus entitled to damages from Defendants in the amount of at least 30 million USD, as well as attorneys' fees.

## VIII.   REQUESTED RELIEF

Based on the foregoing, Plaintiffs respectfully request that the Court:

A.    Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure;

B.    Award compensatory and punitive damages to Plaintiffs and the Class;

C.    Award attorneys' fees and costs;

D.    Enjoin Defendants from operating the HomeX Enterprise, the Deposit Scheme, the False Amazon Return Scheme, and similar enterprises and schemes; and

E.    Grant other relief as the Court deems just and proper.

## IX.    JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Date: July 2, 2024

/s/Alexander Heckscher
Alexander Heckscher
LAW OFFICES OF
 ALEXANDER HECKSCHER, ESQ.
305 Broadway
7th Floor, Suite 88
New York, NY 10007
(212) 323-6895
alex@heckscherlaw.com

Times Wang (pro hac vice pending)
Adam H. Farra (pro hac vice pending)
Farra & Wang PLLC
1300 I Street, N.W., Suite 400E
Washington, D.C. 20005
(202) 505-5990
(202) 505-6227
afarra@farrawang.com
twang@farrawang.com

*Counsel for the Plaintiffs*