UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
YANG, et al.,

                                        Plaintiffs,

                    -against-

FEI, et al.,

                                        Defendants.
------------------------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:_____**
**DATE FILED:** 8/8/2025

**24-CV-5055 (RA) (KHP)**

**OPINION AND ORDER ON**
**PLAINTIFFS' MOTION TO**
**COMPEL**

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE:**

Before the Court is Plaintiffs' motion to compel production of discovery and for

sanctions pursuant to Federal Rule of Civil Procedure ("Rule") 37.  For the reasons discussed

below, the motion is granted in part and denied in part.

## BACKGROUND

Plaintiffs Xin ("Kelly") Yang and Ting ("Susan") Chen bring this civil RICO action on behalf

of themselves and others for alleged violations of RICO, 18 U.S.C. §§ 1962(c) and 1964(c).

Plaintiff Kelly is a resident of Washington State, and Plaintiff Susan is a resident of New York.[1]

Both were customers of the HomeX Enterprise ("HomeX") and alleged victims of fraud

perpetrated by the enterprise through Defendants.  They seek relief for themselves and on

behalf of a putative class of HomeX victims.

Plaintiffs name fifteen individuals as Defendants, together with an entity called ASZ

Supply LLC, along with 100 John Doe Defendants.  The named Defendants are Chuwen Xu (a/k/a

"A Fei" or "the Boss"), Shuyun Chen ("S. Chen"), Yu "Rita" Chen ("Y. Chen"), Yuezhu Du ("Du"),

---

[1] Because Plaintiffs have the same surname as some of the Defendants, the Court utilizes the anglicized first names
provided by Plaintiffs for clarity.

1

Yurong "Mary" Hu ("M. Hu"), Yuxia Hu ("Y. Hu"), Xue "Linda" Lin ("Lin"), Qilong "Lucy" Liu ("Liu"), Lijun Ouyang ("Ouyang"), Jingyi Shen ("Shen"), Wenling "Abby" Wang ("Wang"), Yun Ye ("Ye"), Nan "Lucas" Zheng ("Zheng"), Xiaona "Lina" Zhou ("Zhou"), Lei "Andy" Zhu ("Zhu"), ASZ Supply LLC ("ASZ"), a New Jersey entity, and Doe Defendants 1-100 (collectively "Defendants"). There are only six Defendants who have been served and appeared through counsel, Aleksander Milch, Esq.:  Y. Hu, Liu, Wang, Ye, Zheng, and Zhou.  Two other Defendants, Y. Chen and Ouyang, were served with the initial complaint but did not file an answer, and accordingly, the Clerk of Court issued certificates of default as to them on April 1, 2025 and April 9, 2025, respectively, prior to the filing of the amended complaint.  (ECF Nos. 69, 83)  Defendant Du was served with the original complaint on September 16, 2024, but has not appeared in the action. (ECF No. 52).  The remaining Defendants (A Fei, S. Chen, M. Hu, Lin, Shen, Zhu, and ASZ) have not been served with either the original complaint or the amended complaint.  Some of the individual Defendants reside in New York, including defaulting Defendant Y. Chen, non-appearing Defendant Du, and unserved Defendants M. Hu, and Lin.  Other Defendants are alleged to live in Michigan, Pennsylvania, Georgia, Nebraska, New Jersey, Wisconsin, and Virginia.  Lead Defendant A Fei is believed to live in China.

HomeX is an alleged enterprise that allegedly engages in multiple fraudulent schemes and money laundering.  One such scheme is the "Deposit Scheme," which  entailed a purported method of obtaining home furnishings and other high value goods from e-commerce outlets like Amazon, for little more than the sales tax.  Members of the enterprise solicited funds, which Plaintiffs call "Deposits," which HomeX would invest and also use to purchase home goods (such as a home office desk chair) that Plaintiffs selected from Amazon at a group

discount.  HomeX promised Plaintiffs it would refund the Deposits plus additional amounts that would cover the cost of home goods Plaintiffs purchased on Amazon (meaning that they would essentially obtain the home goods for free).  However, Plaintiffs contend that the Deposits were not invested and that refunds were paid from Deposits paid by newer customers (i.e., a Ponzi scheme).

One of the vehicles for the Deposit Scheme was a now defunct website, homexdeals.com.  Individuals like Plaintiffs could visit the website and be assigned to a HomeX WeChat group where they interacted with an "Administrator" to place orders for goods they wanted to purchase.  In general, the customers made a Deposit in an amount that far exceeded the price of the product's listed price (such as on Amazon), and the Administrators represented that the deposit would be refunded within 60-90 days and the product shipped.  The Deposits would be paid to HomeX and customers also were instructed to pay for the listed price of the product on the Amazon (or other) storefront.  The Administrators required payment to Amazon (or other store) to be made by credit card and explained the refund of the Amazon purchase price would not include refund of taxes.  Deposits were made to bank accounts specified by the Administrator, through an app such as Zelle.  The accounts sometimes were in the name of different persons, such as "fang bin li," not in the name of HomeX.  HomeX Administrators explained that some of the Deposits and refunds were made to and from other customers to simplify transactions, rather than having them all go through HomeX.  The scheme also involved convincing customers to buy memberships to different "customer tiers," which corresponded to different Deposit amounts or eliminated the need to make a Deposit.

If the customer wanted a refund in RMB instead of USD, the Administrator specified the exchange rate. Deposit refunds were paid in USD, unless the customer wanted an RMB, in which case there would be a different exchange rate than applied for Amazon refunds. According to Plaintiffs, the Amazon (or other) storefronts were controlled by Defendant Xu (a/k/a A Fei). Sometimes HomeX initiated fraudulent returns of items customers purchases on Amazon through storefronts controlled by HomeX to obtain a refund without returning the item to Amazon. This allowed HomeX to use Amazon's money to refund Deposits to some HomeX customers. Sometimes HomeX Administrators advised customers to seek refunds through Amazon's "A-to-z Guarantee" program and inform Amazon that they were not satisfied with the purchase (e.g., due to condition of product upon delivery) to obtain the refund, which allowed HomeX to keep money received from customers while claiming to have provided them with a refund.

HomeX Administrators encouraged Plaintiffs and other customers to recruit more people into the scheme. Plaintiffs estimate there may be thousands of victims. As the scheme progressed, it began to be clear to Plaintiffs that they were victims of a Ponzi scheme and that they may not get all their money refunded. By the end of 2022, the scheme began to collapse. As it unraveled, Administrators tried to reassure customers, such as Plaintiffs, that Amazon and credit card companies would protect them if HomeX did not refund their money. Some Administrators admitted that they were quitting or had quit because they learned HomeX was a fraud scheme. In December 2022, one Administrator posted in a WeChat group that the deposit scheme was a scam and that Defendant Xu (a/k/a A Fei) took all the money.

## PROCEDURAL BACKGROUND

This action was filed on July 3, 2024, but because of new information learned about the proper identity of some of the parties, an amended complaint was filed on July 2, 2025. The parties are still at the early stage of discovery, as fact discovery does not close until February 27, 2026. (ECF No. 56) The long fact discovery period takes into account that many of the documents relevant to this matter are in a Chinese language, that Defendants are in multiple locations, including China, and that significant non-party discovery may be needed, as well as foreign discovery through the Hague process.

Plaintiffs served their First Set of Interrogatories and Document Requests on January 20, 2025. Defendants served responses on February 19, 2025, but their responses merely objected with the same boilerplate objections of "overly broad, unclear, invasive, excessive, seeks confidential financial information, and seeks information which is not relevant." No documents were provided. On March 17, 2025, Defendants supplemented their responses by providing additional information in response to Document Request No. 7 but no other documents. The parties met and conferred on March 27, 2025, during which Defense counsel claimed that he was having difficulty obtaining information to respond to discovery requests because he is not fluent in the relevant Chinese language[2] and was overwhelmed with work. Defendants represented they would provide supplemental responses before a scheduled court conference on April 8, 2025. (ECF No. 77)

---

[2] Defense counsel's firm has attorneys that hold themselves out as speaking Chinese languages fluently. https://www.kasenlawfirm.com/ (last visited August 6, 2025).

On April 4, 2025, defense counsel indicated he needed until the end of April to supplement discovery responses, prompting Plaintiffs to write to the Court requesting the Court to impose a firm deadline for each of the represented Defendants to provide individual, complete and substantive responses to the interrogatories and document requests.  (ECF No. 77)  After the April 8, 2025 case management conference, the Court issued an order setting a firm deadline of May 8, 2025 for commencement of a rolling production of actual documents, including electronic documents from WeChat and other platforms.  (ECF No. 82)  The Court also instructed the parties to meet and confer on outstanding objections to the discovery requests and, if they were not resolved, set a deadline on May 16, 2025 for Plaintiffs to file a motion to compel.  (*Id*.)  Defendants did provide documents, but Plaintiffs are unsatisfied with the production to date.

This motion was filed on May 16, 2025 because the parties were not able to resolve the remaining disputes through the meet and confer process.  As of the date of the response to the motion, the appearing and represented Defendants have produced certain documents

**LEGAL STANDARD**

### 1.  Interrogatories

Rule 33 permits a party to serve no more than 25 written interrogatories, *including discrete subparts*.  Fed. R. Civ. P. 33(a)(1) (emphasis added).  An interrogatory may relate to any matter that may be inquired into under Federal Rule of Civil Procedure 26(b)(1).  In other words, interrogatories may seek nonprivileged information "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

6

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2). Grounds for objections to interrogatories must be stated with specificity. Fed. R. Civ. P. 33(b)(4). If examining documents from which the answer to an interrogatory may be ascertained would be no more burdensome to one party than the other, the responding party may answer by specifying the records that contain the answer. *See* Fed. R. Civ. P. 33(d).

The Local Rules for this District restrict the interrogatories that may be served at the commencement of discovery to those "seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents, including pertinent insurance agreements, and other physical evidence, or information of a similar nature." S.D.N.Y. Civ. R. 33.3(a). The Local Rule specifies that, "[d]uring discovery, interrogatories other than those seeking information described in paragraph (a) above may only be served (1) if they are a more practical method of obtaining the information sought than a request for production or a deposition, or (2) if ordered by the Court." S.D.N.Y. Civ. R. 33.3(b). It permits "interrogatories seeking the claims and contentions of the opposing party" to be served at least 30 days prior to the discovery cut-off "unless the Court has ordered otherwise." S.D.N.Y. Civ. R. 33.3(c). The Local Rule reflects the prevailing view in this District that interrogatories are often burdensome and not as effective as other methods of obtaining information in discovery. It explicitly authorizes judges to prohibit interrogatories as part of

their general management of a case.  Thus, the Court has wide discretion in determining whether to require answers to interrogatories.  *Mobil Oil Co. v. Dep't of Energy*, 1982 WL 1135, at *4 (N.D.N.Y. Mar. 8, 1982) (court has wide discretion in determining whether to require answers to interrogatories).

Finally, when a party seeks to serve more than 25 interrogatories, "the movant must make a 'particularized showing' articulating the necessity of propounding further interrogatories."  *Yong Biao Ji v. Aily Foot Relax Station Inc.*, 19 Civ. 11881(VB)(JCM), 2021 WL 1930362, at *5 (S.D.N.Y. May 12, 2021) (citing Douglas v. Harry N. Abrams, Inc., 13-CV-2613 (VSB), 2016 WL 11645646, at *4 (S.D.N.Y. Aug. 23, 2016)).

### 2.  Document Requests

Rule 34 governs document requests, which also must be tailored consistent with Rule 26(b)(1) relevance and proportionality limitations.  Fed. R. Civ. P. 26(b)(1).  Document requests must describe with reasonable particularity each item or category of items requested.  Fed. R. Civ. P. 34(b)(1)(A).  As this Court as previously stated, requesting parties should tailor their requests to minimize objections and facilitate substantive responses, because "[a]ny increase in scope gained by [overbroad requests] is likely offset by wasted time spent resolving objections or narrowing the scope of the request, or by motion practice in which the request may be viewed as overbroad."  *United States v. Anthem, Inc.*, 2024 WL 1116276 (citations omitted).

"[O]verly broad, non-particularized discovery requests that reflexively [seek] all documents," . . . "overuse of boilerplate objections that provid[e] insufficient information about why a party [i]s objecting to producing [a] requested document," . . . and "responses . . . that fail[] to clarify whether responsive documents [ar]e being withheld on the basis of objections"

are improper under Rule 34. *The Sedona Conference Federal Rule of Civil Procedure 34(b)(2)*

*Primer: Practice Pointers for Responding to Discovery Requests*, Sedona Conference Journal Vol

19, pp. 452-53 (2018).

### 3. Limits on Discovery and Proportionality

Rule 1 requires parties to conduct discovery in a manner that is cost effective and

efficient. Fed. R. Civ. P. 1. And, while relevance for purposes of discovery is a broad concept, it

nevertheless has boundaries. *Condit v. Dunne*, 02-CV-9910, 225 F.R.D. 100, 105 (S.D.N.Y. 2004).

Rule 26(g) requires that lawyers must certify that discovery requests and responses are "(i)

consistent with [the] rules and warranted by existing law or by a nonfrivolous argument for

extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed

for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase

the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive,

considering the needs of the case, *prior discovery in the case*, the amount in controversy, and

the importance of the issues at stake in the action." Fed. R. Civ. P. 26(g) (emphasis added). The

court may limit discovery if, among other things, the discovery sought is unreasonably

cumulative or duplicative. Fed. R. Civ. P. 26(b)(2)(C).

### 4. Motions to Compel Under Rule 37

Rule 37(a) allows a party, after notice, to move for an order compelling disclosure or

discovery. The motion must include a certification that the movant has attempted to meet and

confer with the party from whom discover is sought to resolve the issue in good faith without

court intervention. Fed. R. Civ. P. 37(a)(1). Rule 37 motions can be made to compel responses

to interrogatories and document requests. Fed. R. Civ. P. 37(a)(3)(iii)-(iv). The party moving to

compel discovery "bears the initial burden of demonstrating that the information sought is relevant and proportional." *Sportvision, Inc. v. MLB Advanced Media, L.P.*, No. 18 Civ. 3025 (PGG) (VF), 2022 WL 2817141, at *1 (S.D.N.Y. July 19, 2022); *see also Citizens Union of City of N.Y. v. Attorney General of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) ("Plaintiffs, as the parties seeking discovery from [defendant], bear the initial burden of proving that the information and documents sought are relevant and proportional to the needs of the case."). Once the moving party has made this showing, "the burden shifts to the opposing party to justify curtailing discovery." *Sportvision, Inc.*, 2022 WL 2817141, at *1.

Rule 37(b) provides for motions for sanctions for violations of court orders regarding discovery.  In general, if a party fails to obey an order to provide or permit discovery, the court may impose sanctions or issue other orders appropriate to the situation.  Rule 37(b)(2) provides examples of such sanctions or orders, including: (1) directing that matters addressed in the order be taken as established by the prevailing party; (2) prohibiting the sanctioned party from supporting or opposing claims or defenses or from introducing evidence; (3) striking pleadings in whole or in part; (4) staying the proceedings until the order at issue is obeyed; (5) dismissing the action in whole or in part; (6) entering judgment against the disobedient party; and (7) treating the failure to obey the orders at issue as contempt of court (except where the orders direct the party to submit to a physical or mental examination).  Fed. R. Civ. P. 37(b)(2)(A).

In addition to ordering sanctions, under both Rule 37(a) and (b), the court must order payment of reasonable expenses to the party who succeeds on the motion, unless the failure was substantially justified or other circumstances make an award of expenses unjust.  Fed. R. Civ. P. 37(a)(5)(A)-(C); 37(b)(2)(C).

Discovery sanctions are designed to serve several purposes: (1) to ensure that a party will not benefit from its failure to comply; (2) to obtain compliance with the court's orders; and (3) to deter noncompliance, both in the particular case and in litigation in general. *See Cine Forty–Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979); *see also Southern New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 147–49 (2d Cir. 2010) (district court did not err by imposing default judgment on defendants who willfully deleted and refused to produce relevant documents); *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 70–71 (2d Cir. 1988) (granting summary judgment to plaintiff was an appropriate sanction where defendant engaged in extreme dilatory tactics).

When determining whether sanctions should be imposed under Rule 37, courts in the Second Circuit weigh the following non-exhaustive factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (alteration in original) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)).  No single factor is dispositive and "they need not each be resolved against the party challenging the district court's sanctions . . . to conclude that those sanctions were within the court's discretion." *See World Wide Polymers*, 694 F.3d at 159 (quoting *Southern New England Tel. Co.*, 624 F.3d at 144).  As such, the Court must weigh each factor when determining whether a party should be sanctioned and what sanction, if any, should be imposed.

The imposition of sanctions lies within the sound discretion of the court.  *See Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d Cir. 1994); *see also Doe v. Delta Airlines Inc.*, 672 F. App'x 48, 50 (2d Cir. 2016) ("When faced with a 'breach of a discovery obligation [that] is the non-production of evidence, a District Court has broad discretion in fashioning an appropriate sanction.'") (citation omitted).  However, any sanction must be both "just" and "commensurate" in severity with the non-compliance.  *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007) (internal quotation marks and citation omitted); *see also Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-cv-1318 (GBD) (BCM), 2017 WL 3671036, at *21 (S.D.N.Y. July 18, 2017), adopted by 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017).

## DISCUSSION

Plaintiffs served the same 10 interrogatories and 25 document requests on each represented Defendant.[3]  They claim the interrogatories seek basic information essential to Plaintiffs' claims about the alleged deposit scheme.  They call out Interrogatories 1, 4 and 7 in particular, saying they need Defendants to identify administrators and managers of HomeX by name, role and contact information, to identify financial accounts used to receive customer deposits, and to explain deposit collection procedures.  They similarly claim their document requests seek relevant information, calling out requests 3, 6, and 11 seeking documents concerning customer deposits and refunds, communications between Defendants about HomeX operations, and documents concerning the WeChat groups used for HomeX.

---

[3] Twenty-seven requests were served on Defendant Zhou.

While Plaintiffs acknowledge that Defendants have provided responses, they claim they are deficient.  To start, they complain about Defendants' boilerplate objections because they do not provide the specificity required by the Rules.  Plaintiffs are correct that the Rules contemplate specific objections tailored to each interrogatory or document request rather than boilerplate objections. *See Pegoraro v. Marrero*, 281 F.R.D. 122 (S.D.N.Y. 2012).  Plaintiffs also complain that the objection to their interrogatories as overly broad is improper because the interrogatories are aimed at learning information going to the heart of their claims. Accordingly, they argue the objections should be deemed waived as a result, and that the Court require Defendants to respond fully.

As to document requests, Plaintiffs purport to provide "statistics" regarding the percentage of compliance by each Defendant.  They derive their compliance statistics from the number of requests to which documents were actually produced.  Plaintiffs speculate that Defendants have to have created and maintained more records than produced based on the allegations in the complaint that they collected deposits, communicated with customers through WeChat, and managed financial transactions.

At the same time, they admit that Defendant Zhou provided detailed information regarding different accounts and corresponding names, routing and account information but complain did not provide the names of administrators or WeChat groups in response to Interrogatories 1 and 5.  Similarly, they admit that Defendant Hu provided extensive financial information in response to Interrogatory 4, but complaint Hu failed to explain the managerial hierarchy within HomeX and only identified the individual who set deposit amounts and

approved refunds.  Based on these responses, Plaintiffs argue Defendants are being purposely evasive.

Plaintiffs also raise concerns about spoliation insofar as Defendants Wang and Liu have claimed their iPhones malfunctioned or died and thus could not locate documents on them, and have provided no concrete solution to obtaining documents that may exist on their phones. They also take aim at Defense counsel for spoliation insofar as Defense counsel admitted that Defendant Ye turned over documents months ago but the documents were inadvertently lost within Defense counsel's firm.  Defendant Ye has turned over documents, but Defense counsel is trying to determine whether there are any other documents from Ye that were previously provided to his firm that have yet to be produced.

Finally, Plaintiffs complain that the documents produced are not usable because they are badly or selectively cropped, rendering some unreadable, in violation of Rule 34(b)(2)(e)(i) (requiring documents to be produced as they are kept in the usual course of business).

Plaintiffs also contend that failure to produce all documents and provide complete responses to all interrogatories by May 8 violates this Court's April 8, 2025 order regarding discovery.  They acknowledge they received some responses, but take issue with Defendants Zhou, Hu, Liu, Wang, Zeng, and Ye stating in their response that they do not have all the information to answer all the interrogatories completely and need further time to review them.

Insofar as discovery is half over and Plaintiffs still lack complete information responsive to their interrogatories and document requests, they say they have been prejudiced because they will have to assess discovery in a more compressed time than initially contemplated,

making it difficult to prove their case.  While sympathetic to Defense counsel's workload issues, they say that cannot be an excuse for delaying discovery.

They seek an order requiring Defendants to provide complete responses to interrogatories and document requests with no objections other than for privilege; deeming waived any objections not properly stated with specificity; requiring Defendants to provide signed affidavits describing their document search efforts and certifying that all responsive documents have been produced in complete, uncropped, and readable form; awarding them attorneys' fees and costs associated with bringing this motion; and issuing a warning that further non-compliance will result in case-dispositive sanctions.

### 1. Interrogatories

Plaintiffs' complaints about Defendants' responses to the interrogatories are understandable but do not merit a sanction.  Having reviewed the interrogatories, it is clear they are not consistent with Rule 33 insofar as they are in counterparts, causing them to constitute far more than the presumptive 25 limit.  Fed. R. Civ. P. 33 (setting forth presumptive limit of 25 interrogatories); *Heras v. Metropolitan Learning Institute*, 2021 WL 5888541 (E.D.N.Y. Dec. 13, 2021) (court denied motion to compel because the movant disregarded Rule 33(a)(1) limitations on the number of interrogatories).  Indeed, they number nearly 50 when including subparts.  They also are inconsistent with Local Rule 33.3 insofar as they ask for more information than seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each category of damage alleged, and the existence, custodian, location and general description of relevant documents, including

pertinent insurance agreements, and other physical evidence, or information of a similar nature.

For example, Interrogatory 1 asks each of the Defendants to identify each person who is or was an Administrator, manager, officer, or supervise within the HomeX Enterprise from January 1, 2020 to the present, and for each such person provide their full name and aliases, role within HomeX, dates of involvement in HomeX, WeChat account names, current contact information, roles and responsibilities including identity of the WeChat groups they managed, their reporting relationships, their compensation arrangements, and their specific duties regarding customer Deposits and refunds. Interrogatory 2 asks for each and every company or entity involved in the HomeX Enterprise, including those that received customer Deposits, processed refunds, or operated Amazon storefronts and for each provide the entity's legal name, business address, role in the HomeX Enterprise and the names of the people who owned or controlled each entity. Interrogatory 3 asks each Defendant to identify each and every communication between January 1, 2020 to the present concerning the establishment, operation, or dissolution of HomeX between the Defendant and A Fei, any Administrator, any HomeX-related entity, and any person involved in "the transition to FXD." Interrogatory 4 asks the identity of all financial accounts including but not limited to checking, savings, Zelle, cryptocurrency wallets, Alipay, WeChat Pay, Stripe, or any other payment platforms, that were used to receive, hold, transfer, or otherwise manage customer deposits or membership fees in which you have or had any interest or control from January 1, 2020, to the present, and for each the name of the financial institution or platform, the account number or wallet identifier, the names of the account holders, authorized signatories, and any person involved in "the

16

transition to FXD."  Interrogatory 7 asks each Defendant to "describe in detail all procedures, policies, or practices concerning the collection of customer Deposits, processing of refunds, membership tiers, Amazon return procedures, and payment arrangements between customers for refunds."  (ECF No. 106-1)

The Court provides the above as examples of how the interrogatories are improper at this point in discovery and because Plaintiffs call out Interrogatories 1, 4, and 7 as ones to which they require responses.  Defendants admittedly have not responded to all of the interrogatories in part due to objections as to their breadth and burdensomeness.  Nevertheless, Defendants Zhou, Liu and Zheng produced spreadsheets in English in response to Interrogatory 9, which provide information about all payments made or received by them in connection with HomeX including the date of the payment, amount, source of funds, and bank accounts to which payments were made or received.  Additionally, Defendants have produced documents in response to the interrogatories naming other individuals who held higher positions within HomeX than they did, including "Bing Bing Le," "Yun Yun," and "Rita."

While Defendants' boilerplate objections to the interrogatories are improper, their objection of overbreadth and burdensomeness are valid insofar as there are far more interrogatories than allowed by the Rule and insofar as they seek information that can be obtained through deposition or documents and violate Local Rule 33.3.  The Court agrees that the information sought is relevant to the claims asserted, but finds that depositions of Defendants may be the best way to ascertain much of the information requested and that other information can be obtained through documents.

In these circumstances, the Court finds that sanctions are not warranted with respect to Defendants' responses to the interrogatories.  Defendants need not further respond to the interrogatories because they violate Rule 33 and Local Rule 33.3.

**2. Document Requests**

Plaintiffs' concerns about the responses to their document requests have more validity, but the most severe sanctions they request are not warranted at this time.

The documents requests, like the interrogatories, are quite broad and arguably could have been tailored more precisely.  For example, Request No. 1 asks each Defendant to "[p]roduce any and all documents and communications concerning the ownership, management, and operations of the HomeX Enterprise and any successor entities (including but not limited to FXD and www.furniturexdeals.com), including but not limited to, operating agreements, WeChat group administrator assignments, organization charts, internal policies, communications between A Fei and any Administrator and/or Defendant, and any amendments or changes to organizational structure."  Request No. 3 asks each Defendant to "[p]roduce any and all documents and communications concerning customer Deposits and refunds from January 1, 2020, to the present, including but not limited to, records of Deposits received, bank statements, Payment Records, spreadsheets tracking customer orders and Deposits, and communications with customers regarding Deposits and refunds."  Request No. 6 asks each Defendant to "[p]roduce any and all communications between and among the HomeX Enterprise participants regarding the operation of the Deposit Scheme, including but not limited to, text messages, WeChat messages, emails, letters, meeting notes, and internal memos."  And Request No. 11 asks each Defendant to "[p]roduce any and all documents and

communications concerning WeChat groups operated by the HomeX Enterprise, including but

not limited to, lists of WeChat groups, Administrator assignments, group membership records,

and communications regarding group management and operation."  Request 15 asks each

Defendant to "[p]roduce any and all documents identifying the steps taken to preserve relevant

documents and communications after receiving notice of this litigation, including but not

limited to, litigation holds, preservation notices, and records of document collection efforts."

(ECF No. 106-2)  Thus, the overbreadth objection is not improper.  However, as noted above,

the boilerplate nature of the objections is improper.  Further, Defendants failed to specifically

describe the categories of documents responsive to each request they are producing and the

categories of documents they have but are withholding pursuant to an objection.  Rule 34

requires this type of specificity.  Defendants did, however, properly respond that they have no

responsive documents to some requests and did properly reference specific exhibits/groups of

documents responsive to certain requests.

Just by way of example, Defendant Zhou's responses refer to specific exhibits/groups of

documents as being responsive to document requests 1, 2, 4, 5, 7, 9, 11, 13, 21, and 26.

Defendants say they have no documents in response to requests 3, 10, 12, 14, 16, 17, 18, 19, 20,

22, 24, 25, and 27, subject to objections.  Defendants' response to requests 6 and 23 claims that

the phrase "operation of the Deposit Scheme," used in the Request is improper because the

phrase requires Defendants to assent to Plaintiffs' allegations and theory of the case, which

they do not.  Similarly, Defendants' response to request 8 states that use of the term "financial

condition" in the request is unclear.  Their response to request 15 states the request is unclear

and the documents infringe on attorney-client privilege.  The other Defendants have provided

19

similar responses, though in each case may have had or not had documents to different numbered requests.  For example, Defendant Hu produced documents in response to requests 2, 7,9, and 19 and stated he did not have documents responsive to other requests and asserted the same objections to requests 6, 15, and 23.  Thus, contrary to what Plaintiffs say, it appears that the Defendants did search for documents and in some cases provided meaningful documents relevant to the claims.

The documents produced thus far include pdfs of text messages and WeChat messages in a Chinese language, lists of individuals (presumably associated with HomeX in some way) and contact information, certain bank statements reflecting Zelle transfers from various people and/or entities, pdfs of pictures from phones with some bank account names and Zelle numbers, other documents identifying bank accounts or financial transactions associated with HomeX, similar pdfs appearing to show delivery or shipment of goods ordered through Amazon in connection with HomeX (e.g., the purchase of a bike), copies of legal documents pertaining to other cases involving the Defendants or HomeX (e.g., an order in a Missouri state court, and in New York Supreme Court (Queens County)), pictures of HomeX business cards for certain persons, documents concerning a subpoena seeking Zelle transactions associated with specific tokens or transactions and response thereto.  Only a few of the documents reflecting communications appear to have translations to English.[4]

---

[4] The party seeking to use the evidence generally bears the cost of paying for certified translations.  *Nature's Plus Nordic AS v. Nat. Organics, Inc.*, 274 F.R.D. 437 (E.D.N.Y. 2011).  Thus, a producing party does not need to provide certified translations of documents produced unless that party intends to rely on a document in its defense.

Defense counsel also submitted an affirmation in opposition to the motion explaining that the appearing Defendants are/were lower-level Administrators of HomeX and do not have access to all information; rather, they say the lead Defendant a/k/a A Fei is the best source of information.  Plaintiffs provide no basis for questioning this representation.  Defense counsel also indicates he recognizes that some of the WeChat information is incomplete, including from Defendants whose phones were allegedly inaccessible, and that they are in the process of ordering complete WeChat histories.  Defense counsel attests that he has been working in good faith with Defendants to search for and produce relevant responsive documents, but also says he is understaffed and overburdened with a heavy caseload.  Defendants provide no information about the suspected spoliation or timeline for obtaining complete WeChat messages – the predominant way communications were had between and among HomeX and victims of the scheme.

To start, while the Court is sympathetic to Defense counsel's excessive workload, counsel has ethical obligations toward his clients and professional obligations to the Court as well.  New York's Rules of Professional Conduct state that "[a] lawyer shall not handle a legal matter that the lawyer knows or should know that the lawyer is not competent to handle, without associating with a lawyer who is competent to handle it."  Rule 1.1(b).  Additionally, Rule 1.3 provides that a lawyer "shall not neglect a legal matter entrusted to the lawyer."  Rule 1.3(b).  These rules together require counsel to seek assistance when it becomes apparent such assistance is needed.  It is clear to this Court that Defense counsel cannot take on the defense of this large and complex matter absent additional help from lawyers who are more knowledgeable about litigation procedures, particularly ESI discovery involving platforms such

21

as WeChat and concerning forensically sound extractions of ESI from iPhones, and who have more time to dedicate to this case. Being at a small firm is not an excuse for non-compliance with discovery obligations. *J.C. v. Zimmerman*, 22-CV-323, 2023 WL 6308493, at *10 (S.D.N.Y. Sept. 28, 2023).

It is not clear that relevant evidence has been spoliated at this time. In general, technical difficulties are not an excuse to delay production or to avoid sanctions. *Gardner-Alfred*, 22-CV-01585, 2023 WL 3495091, at *9 (S.D.N.Y. May 17, 2023). But it is often the case that parties run into technical difficulties with ESI that causes delays. Timely communication to the requesting party and the Court about these difficulties can avoid potential sanctions. Defense counsel has not provided sufficient explanation of the difficulties encountered or to give confidence that there is a plan in place to recover information in a forensically sound manner from Defendants' phones and computers.

Nevertheless, Plaintiffs are entitled to certain relief because the appearing Defendants have not fully complied with their obligations under the Rules. Accordingly, the Court finds that certain sanctions and warnings are required. The circumstances are not as severe yet as in some of the cases cited by Plaintiffs, rendering some of the sanctions requested inappropriate. And, by complying with this Order, the Court trusts that no further sanctions motions will be warranted.

**FINDINGS AND ORDERS**

For the reasons set forth above, Defendants are excused from further responding to the interrogatories. However, the Court finds that Defendants have fallen far short of their duty to

reasonably search for and timely produce documents responsive to Plaintiffs' document requests. Accordingly, it is hereby ORDERED THAT:

- By August 29, 2025, the appearing and represented Defendants shall retain a vendor to assist with a forensic extraction of data from their iPhones and any other electronic devices used in connection with HomeX, as well as from their WeChat accounts/groups.

- By August 29, 2025, Defense counsel shall engage/assign at least one additional lawyer from their firm to assist with defense of this matter.

- By August 29, 2025, Defendants shall reproduce full and legible copies of documents that were produced in illegible/cut-off form.

- By August 29, 2025, Defendants shall provide a privilege log as to any responsive documents being withheld on the basis of privilege to Document Request 15.

- By August 29, 2025, each Defendant shall provide a declaration describing and listing the devices they used for work associated with HomeX and explaining what each device was used for and the date range applicable to their use of such device in connection with HomeX.

- By August 29, 2025, Defense counsel shall provide a letter to the Court setting forth the steps taken to preserve evidence.

- By August 29, 2025, the parties shall agree on deposition dates for each of the Defendants. Such deposition dates must be scheduled on or before October 15, 2025, regardless of whether additional documents have been produced. The Court believes that these depositions will aid the discovery of relevant information.

- Plaintiffs' motion for an award of attorneys' fees and costs associated with bringing this motion is granted. Plaintiffs shall submit a motion for attorneys' fees and costs, together with detailed time sheets reflecting work on the instant motion, and supported by appropriate documentation of rates/experience of counsel, by no later than August 29, 2025. Opposition due September 12, 2025. No reply.

Defendants are warned that failure to comply with this Order may result in more severe sanctions against them and their counsel.

**The Clerk of Court is respectfully directed to terminate the motion at ECF No. 99.**

**SO ORDERED.**

Dated: August 8, 2025
        New York, New York

_____
Katharine H. Parker
United States Magistrate Judge