Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

XIN "KELLY" YANG and TING "SUSAN"
CHEN, on behalf of themselves and all others
similarly situated,

            Plaintiffs,

            v.

A FEI, SHUYUN CHEN, YU "RITA" CHEN,
YUEZHU DU, YURONG "MARY" HU, YUXIA
HU, XUE "LINDA" LIN, QILONG "LUCY" LIU,
LIJUN OUYANG, JINGYI SHEN, WENLING
"ABBY" WANG, YUN YE, NAN "LUCAS"
ZHENG, XIAONA "LINA" ZHOU, LEI "ANDY"
ZHU, ASZ SUPPLY INC., AND DOE
DEFENDANTS 1-100,

            Defendants.

PLAINTIFFS' FIRST SET OF REQUESTS
FOR PRODUCTION OF DOCUMENTS

Case No. 1:24-cv-05055-RA

PLEASE TAKE NOTICE that pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiffs, by the undersigned counsel, hereby demand Nan Zheng ("Defendant" or "you"), serve upon the undersigned complete and accurate responses and produce for inspection and copying the documents requested herein within thirty (30) days in accordance with the definitions and instructions set forth below.

## DEFINITIONS

The following definitions shall apply:

1.      "Communications" mean any transmittal of information in any form or format, whether oral, written, or electronic, including, without limitation, all emails, text messages, WeChat messages, correspondence, inquiries, discussions, conversations, negotiations, agreements, understandings, meetings, telephone conversations and message logs, letters, notes, memoranda, telegrams, faxes, or recordings. It is understood that all categories of documents described above shall include with respect thereto all communications as defined, whether or not expressly stated. The production of electronic communications should be accompanied by a description of the software and technology used to prepare the communications and needed to read them.

2.      "Documents" mean all writings of any kind, including the originals and all nonidentical copies, whether different from the originals by reason of any notation made on such copies or otherwise (including without limitation correspondence, e-mail, memoranda, notes, diaries, statistics, checks, statements, receipts, returns, summaries, pleadings, affidavits, depositions, pamphlets, books, prospectuses, inter-office and intra-office communications, offer notations of any sort of conversations, telephone calls, meetings or other communications, bulletins, printed matter, computer printouts, information contained in any computer although not yet printed in hard copy, and all drafts, alterations, modifications, changes and amendments of any of the foregoing), graphic or oral records or representations of any kind (including without limitation photographs, charts, graphs, microfiche, microfilm, videotape, recordings, motion pictures) and electronic, mechanical or electrical records or representations of any kind (including without limitation tapes, cassettes, discs, recordings).

3.      "Concerning" means, in addition to its usual and customary meanings, referring to, reflecting, regarding, pertaining to, addressing, discussing, alluding to, describing, evidencing, constituting or otherwise having any logical or factual connection with the subject matter addressed.

4.      "HomeX Enterprise" means the enterprise alleged in the Complaint, including but not limited to its operations through www.homexdeals.com, its WeChat groups, and its successor entity FXD (www.furniturexdeals.com). Capitalized terms used but not defined herein shall have their respective meanings given to them in the Complaint.

5.      "Deposit Scheme" means the scheme alleged in the Complaint whereby customers were induced to pay deposits (圈货金) for goods with promises of future refunds.

6.      "Person(s)" means any natural person or any legal entity, including, without limitation, any business or governmental entity, organization or association.

7.      "Defendants" means all defendants named in the Complaint, including A Fei (the "Boss"), all Administrator Defendants, and Doe Defendants 1-100.

8.      "Complaint" means the Class Action Complaint filed on July 2, 2024, in the above-captioned action.

9.      "Administrator" means any person who operated or managed WeChat groups as part of the HomeX Enterprise.

10.     "Payment Records" means any and all records reflecting payments or transfers of funds, including but not limited to those made via Zelle, PayPal, WeChat Pay, Alipay, Stripe, bank transfers, or similar platforms or methods, and encompassing transaction details (such as amounts, dates, recipients, and sources) and account statements or logs related to such payments.

11.     The words "and" and "or" shall be construed disjunctively or conjunctively to bring within the scope of each document request all responses which otherwise might be construed to be outside the scope of an interrogatory.

12.     The word "any" shall be construed to include "all" and vice versa.

13.     The word "each" shall be construed to include "every" and vice versa.

14.     Any word in the singular form shall also be construed as plural and vice versa.

## INSTRUCTIONS

1.      All objections to the production of documents requested herein shall be made in writing and delivered to the office of undersigned counsel, on or before the date set for production.

2.      All documents are to be produced as they are kept in the usual course of business including any labels, file markings or similar identifying features, or shall be organized and labeled to correspond to the categories requested herein.

3.      These requests call for the production of all responsive documents in your possession, custody or control, or in the possession, custody or control of your employees, predecessors, successors, parents, subsidiaries, divisions, affiliates, partners, joint venturers, brokers, accountants, financial advisors, representatives and agents or other persons acting on your behalf, without regard to the physical location of such documents.

4.      In responding to these requests, include documents obtained on your behalf by your counsel, employees, agents or any other persons acting on your behalf. If your response is that the documents are not within your possession or custody, describe in detail the unsuccessful efforts you made to locate each such document. If your response is that documents are not under your control, identify who has the control and the location of the documents.

3

5.    If any document was, but no longer is, in your possession, subject to your control or in existence, include a statement:

(a)    identifying the document;

(b)    describing where the document is now;

(c)    identifying who has control of the document;

(d)    describing how the document became lost or destroyed or was transferred; and

(e)    identifying each of those persons responsible for or having knowledge of the loss, destruction or transfer of the document from your possession, custody or control.

6.    Each request contemplates production of all documents in their entirety. If only a portion of a document is responsive to one or more requests, the document shall be produced in its entirety.

7.    If any document is withheld in whole or in part for any reason including, without limitation, a claim of privilege or other protection from disclosure such as the work product doctrine or other business confidentiality or trade secret protection, provide a privilege log setting forth separately with respect to each withheld document:

(a)    the privilege or protection claimed;

(b)    every basis for the privilege or protection claimed;

(c)    the type of document;

(d)    its general subject matter;

(e)    the document's date; and

(f)    other information sufficient to enable a full assessment of the applicability of the privilege or protection claims.

8.    To the extent you assert that a document contains information that should be protected from disclosure (based on the attorney-client privilege, work product doctrine or another protection) and non-privileged information, the non-privileged portions of the document must be produced. For each such document, indicate the portion of the document withheld by stamping the words "MATERIAL REDACTED" on the document in an appropriate location that does not obscure the remaining text.

9.    If there are no documents in response to any particular request, you shall state so in writing.

10.    Unless otherwise stated herein, all documents requested are for the period commencing January 1, 2020, up to and including the present.

11.    These requests are continuing, and your response to these requests must be promptly supplemented when appropriate or necessary.

12.    For documents that originated in paper format, the following specifications should be used for their production:

> (a)    images should be produced as single page TIFF group IV format imaged at 300dpi;
>
> (b)    each filename must be unique and match the Bates number of the page. The filename should not contain any blank spaces and should be zero padded (for example ABC00000001);
>
> (c)    media may be delivered on CDs, DVDs or external USB hard drives. Each media volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001);
>
> (d)    each delivery should be accompanied by an image cross reference file that contains document breaks;
>
> (e)    a delimited text file that contains available fielded data should also be included and at a minimum include Beginning Bates Number, Ending Bates Number, Custodian and Number of Pages. The delimiters for that file should be:
>
>> i.    Field Separator: "|"
>>
>> ii.    Quote Character: "~"
>>
>> iii.    Multi-Entry Delimiter: ";"
>
> (f)    to the extent that documents have been run through Optical Character Recognition (OCR) Software in the course of reviewing the documents for production, full text should also be delivered for each document. Text should be delivered on a document level in an appropriately formatted text file (.txt) that is named to match the first Bates number of the document; and
>
> (g)    a text cross-reference load file should also be included with the production delivery that lists the beginning Bates number of the document and the relative path to the text file for that document on the production media.

13.    Electronic documents should be produced in such fashion as to identify the location (i.e., the network file folder, hard drive, back-up tape or other location) where the documents are stored and, where applicable, the natural person in whose possession they were

found (or on whose hardware device they reside or are stored). If the storage location was a file share or work group folder, that should be specified as well.

14.      Attachments, enclosures, and/or exhibits to any parent documents should also be produced and proximately linked to the respective parent documents containing the attachments, enclosures, and/or exhibits.

15.      For standard documents, emails, and presentations originating in electronic form, documents should be produced as TIFF images using the same specifications above with the following exceptions:

    (a)      Provide a delimited text file (using the delimiters detailed above) containing the following extracted metadata fields:

        i.      Beginning Production Number

        ii.      Ending Production Number

        iii.      Beginning Attachment Range

        iv.      Ending Attachment Range

        v.      Custodian

        vi.      Original Location Path

        vii.      Email Folder Path

        viii.      Document Type

        ix.      Author

        x.      File Name

        xi.      File Size

        xii.      MD5 Hash

        xiii.      Date Last Modified

        xiv.      Date Created

        xv.      Date Last Accessed

        xvi.      Date Sent

        xvii.      Date Received

        xviii.      Recipients

        xix.        Copyees

        xx.        Blind Copyees

        xxi.        Email Subject

        xxii.        Path to Native File

(b)      Extracted full text (not OCR text) should also be delivered for each electronic document. The extracted full text should be delivered on a document level according to the specifications above for paper documents.

(c)      foreign language text files and metadata should be delivered with the correct encoding to enable the preservation of the documents' original language; and

(d)      all spreadsheets should be produced in their native format and in the order that they were stored in the ordinary course of business, i.e., emails that attach spreadsheets should not be separated from each other and should be linked using the Attachment Range fields above. The original file name should be prepended with the document Bates number. The extractable metadata and text should be produced in the same manner as other documents that originated in electronic form.

16.     Generally, databases should be produced in a mutually-agreeable data exchange format. To determine the databases that are relevant to the document requests, a list of databases and systems used to manage relevant data should be provided with the following information:

(a)      Database Name

(b)      Type of Database

(c)      Software Platform

(d)      Software Version

(e)      Business Purpose

(f)      Users

(g)      Size in Gigabytes

(h)      A List of Standard Reports

(i)      Database Owner or Administrator's Name

(j)      Field List

(k)     Field Definitions (including field type, size and use)

17.     Each page of a produced document shall have a legible, unique page identifier ("Production Number") and confidentiality legend (where applicable) electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. No other legend or stamp should be placed on the document image other than the Production Number, confidentiality legend (where applicable), and redactions addressed above.

## DOCUMENTS REQUESTED

**DOCUMENT REQUEST NO. 1:** Produce any and all documents and communications concerning the ownership, management, and operations of the HomeX Enterprise and any successor entities (including but not limited to FXD and www.furniturexdeals.com), including but not limited to, operating agreements, WeChat group administrator assignments, organization charts, internal policies, communications between A Fei and any Administrator and/or Defendant, and any amendments or changes to organizational structure.

**DOCUMENT REQUEST NO. 2:** Produce any and all documents and communications identifying the roles, responsibilities, and decision-making authorities of individuals within the HomeX Enterprise, including but not limited to, any administrator agreements, organization charts, internal policies, communications regarding administrator responsibilities, commission structures, and any documents showing changes in administrator roles or responsibilities.

**DOCUMENT REQUEST NO. 3:** Produce any and all documents and communications concerning customer Deposits and refunds from January 1, 2020, to the present, including but not limited to, records of Deposits received, bank statements, Payment Records, spreadsheets tracking customer orders and Deposits, and communications with customers regarding Deposits and refunds.

**DOCUMENT REQUEST NO. 4:** Produce any and all documents and communications detailing the ownership interests or control exercised by A Fei ("the Boss"), directly or indirectly, in any companies or entities involved in the HomeX Enterprise since January 1, 2020, including but not limited to, any operating agreements, communications regarding business ownership, and Payment Records to or from A Fei.

**DOCUMENT REQUEST NO. 5:** Produce any and all documents and communications concerning the Amazon storefronts used by the HomeX Enterprise, including but not limited to, records of storefront ownership, control, and operation, communications regarding Amazon return requests, records of refunds obtained from Amazon, and communications instructing customers how to obtain Amazon refunds.

**DOCUMENT REQUEST NO. 6:** Produce any and all communications between and among the HomeX Enterprise participants regarding the operation of the Deposit Scheme, including but not limited to, text messages, WeChat messages, emails, letters, meeting notes, and internal memos.

**DOCUMENT REQUEST NO. 7:** Produce any and all documents and communications related to any past or ongoing legal, arbitration, or administrative proceedings involving any Defendant or the HomeX Enterprise from January 1, 2020, to the present, including but not limited to, complaints, judgments, settlements, or agreements.

**DOCUMENT REQUEST NO. 8:** Produce any and all documents and communications concerning the financial condition of all Defendants and the HomeX Enterprise from January 1, 2020, to the present, including but not limited to, financial statements, tax returns, profit and loss

statements, balance sheets, bank statements, and Payment Records to the HomeX Enterprise participants.

**DOCUMENT REQUEST NO. 9:** Produce any and all documents and communications concerning the HomeX membership program, including but not limited to, membership agreements, records of membership fees received, marketing materials, communications regarding membership benefits, and records tracking member status.

**DOCUMENT REQUEST NO. 10:** Produce any and all documents and communications concerning the transfer of the HomeX Enterprise assets or funds between January 1, 2020, and the present, including but not limited to, records of transfers between the HomeX Enterprise participants, records of transfers to offshore accounts, and records identifying all accounts used to receive or transfer Enterprise funds.

**DOCUMENT REQUEST NO. 11:** Produce any and all documents and communications concerning WeChat groups operated by the HomeX Enterprise, including but not limited to, lists of WeChat groups, Administrator assignments, group membership records, and communications regarding group management and operation.

**DOCUMENT REQUEST NO. 12:** Produce any and all documents and communications concerning payments or transfers made to Administrator Defendants from the HomeX Enterprise or any related entities, including but not limited to, Payment Records, commission statements, bank records, and communications regarding compensation.

**DOCUMENT REQUEST NO. 13:** Produce any and all documents and communications reflecting the marketing and promotion of the HomeX Enterprise to potential customers, including but not limited to, marketing materials, WeChat messages, website content, promotional offers, and communications regarding marketing strategies.

**DOCUMENT REQUEST NO. 14**: Produce any and all documents and communications concerning the relationship between the HomeX Enterprise and FXD, including but not limited to, communications regarding the transition from HomeX to FXD, transfer of assets or operations, and continuation of business practices.

**DOCUMENT REQUEST NO. 15:** Produce any and all documents identifying the steps taken to preserve relevant documents and communications after receiving notice of this litigation, including but not limited to, litigation holds, preservation notices, and records of document collection efforts.

**DOCUMENT REQUEST NO. 16:** Produce any and all documents concerning expense reports and reimbursements submitted by or paid to any employees, contractors, or agents of the HomeX Enterprise or any related entities from January 1, 2020, to the present, including receipts, approval communications, and Payment Records.

**DOCUMENT REQUEST NO. 17:** Produce any and all documents concerning financial relationships or transactions between the HomeX Enterprise or any related entities and any

foreign individuals, entities, or financial institutions from January 1, 2020, to the present, including contracts, agreements, and transaction records.

**DOCUMENT REQUEST NO. 18:** Produce any and all documents concerning communications with financial institutions regarding the opening, closing, or management of any accounts held by the HomeX Enterprise or any related entities from January 1, 2020, to the present, including account applications, correspondence, and internal approvals.

**DOCUMENT REQUEST NO. 19:** Produce any and all documents and communications sent or received between you, A Fei, HomeX Enterprise, and any of its related entities concerning the Deposit Scheme, the operation and management of HomeX Enterprise, or its successor FXD, from January 1, 2020, to the present, including but not limited to emails, WeChat messages, contracts, agreements, and internal correspondence."

**DOCUMENT REQUEST NO. 20:** Produce any and all templates, scripts, or standardized communications used by the HomeX Enterprise or its related entities to solicit deposits from customers, including but not limited to advertisements, promotional emails, and messages sent via WeChat or other platforms.

**DOCUMENT REQUEST NO. 21:** Produce any and all documents and communications, including but not limited to, WeChat messages, text messages, WhatsApp messages, e-mails, letters, discussing or referencing customer complaints or inquiries related to undelivered goods, unfulfilled refunds, or delays in processing refunds, from January 1, 2020, to the present.

**DOCUMENT REQUEST NO. 22:** Produce any and all documents and communications, including internal training materials, guidelines, or manuals, used by the HomeX Enterprise or its related entities to train employees or Administrators on how to solicit deposits or respond to refund requests.

**DOCUMENT REQUEST NO. 23:** Produce any and all documents and communications related to the HomeX Enterprise, the Deposit Scheme, or FXD.

**DOCUMENT REQUEST NO. 24:** Produce any and all documents and communications related your financial dealings with the HomeX Enterprise, the Deposit Scheme, or FXD, including but not limited to statements from any financial or other account used by you to send, receive, or process any monies related to the HomeX Enterprise, the Deposit Scheme, or FXD.

**DOCUMENT REQUEST NO. 25:** Produce any and all insurance policies that may provide coverage for your potential liabilities in this dispute.

Date: January 20, 2025

*/s/ Times Wang*
Alexander Heckscher
LAW OFFICES OF
 ALEXANDER HECKSCHER, ESQ.
305 Broadway
7th Floor, Suite 88
New York, NY 10007
(212) 323-6895
alex@heckscherlaw.com

Times Wang (admitted *pro hac vice*)
FARRA & WANG PLLC
1543 Champa St., Suite 400
Denver, CO 80202
(303) 534-3047
twang@farrawang.com

*Counsel for the Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that I served a copy of the foregoing document on all counsel of record by email on January 20, 2025.

Date: January 20, 2025

*/s/ Times Wang*
Times Wang